

Mi**** Orde**** **m (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7843 | **DATE** | 2/21/2001 |
| **CASE TITLE** | Saad S. Noah vs. Mancari's CPJ | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendant Mancari's motion for summary judgment [doc. # 41-1] is GRANTED. This case is therefore dismissed. The Clerk of the Court is to enter final judgment for Mancari's and against Mr. Noah, pursuant to Fed. R. Civ.P. 58. Each party is to bear its own costs.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | Document Number |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | **77** |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 2/21/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| JJK | courtroom deputy's initials | ... FEB 21 PM 3: 11 | JJK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| SAAD S. NOAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 96 C 7843 |
| vs. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| MANCARI'S CPJ, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

FEB 2 2 2001

## MEMORANDUM OPINION AND ORDER

This case has been brought pursuant to the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101 *et. seq.,* by plaintiff, Saad S. Noah, against the defendant, Mancari's Chrysler,

Plymouth, Jeep Eagle, Inc. ("Mancari"). Mr. Noah, who currently is proceeding *pro se,*[1] alleges that

Mancari violated the ADA by refusing to rehire him when Mr. Noah sought a job more than one year

after his doctor had cleared him to return to work from time off resulting from an alleged back

injury. Mancari has moved for summary judgment (doc. # 41), contending that Mr. Noah cannot

claim relief or protection under the ADA because he is not "disabled" within the meaning of the Act;

Mancari further argues that, even if Mr. Noah were disabled, Mancari was not bound to rehire or

employ Mr. Noah. For reasons set forth below, the motion for summary judgment is granted.[2]

---

[1]At Mr. Noah's request, on March 10, 1997, the district judge then presiding appointed counsel to represent Mr. Noah (doc. # 10). On February 29, 2000, at Mr. Noah's request, that appointed counsel was relieved of the appointment (doc. # 45). Since that time, Mr. Noah has not obtained new counsel, but has proceeded *pro se.*

[2]By the parties' consent, on March 13, 1998, this case was reassigned to this Court, pursuant to 28 U.S.C. § 636(c)(1) and Northern District of Illinois Local Rule 73.1(b), for this Court to conduct any and all proceedings in this case, and to enter final judgment (doc. ## 27, 28).

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). A genuine issue for trial exists only when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50; *Flipside Prods., Inc. v. Jam Prods. Ltd.*, 843 F.2d 1024, 1032 (7th Cir. 1988).

Local Rule 56.1(a) requires a party moving for summary judgment to file a statement of material facts as to which the moving party contends there is no genuine issue. All properly supported material facts set forth in such a statement are deemed admitted unless properly controverted by the opposing party. *See id.*; *see also Corder v. Lucent Techs., Inc.*, 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994).

Local Rule 56.1(b) requires the party opposing the motion for summary judgment to serve and file, among other things, a concise statement in response to each numbered paragraph in the moving party's Rule 56.1(a) statement of undisputed facts. This statement, by definition, serves to crystallize the factual issues on which there is both dispute and no dispute. Where there are disputes of fact, the opposing party is required to cite to evidentiary materials supporting the assertion of the dispute, such as affidavits, deposition testimony, documentary exhibits and so forth. *See* N. D. IL. L. R. 56.1(b)(1), (3)(A). Mere denials of a properly supported factual statement are not sufficient to show that a genuine issue of material fact exists. *See Shermer v. Illinois Dep't of Transp.*, 171

F.3d 475, 477 (7th Cir. 1999) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Rather, a party must "come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge*, 24 F.3d at 921; *see also Vector-Springfield Properties, Ltd. v. Central Illinois Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir. 1997). To meet this burden, a party contesting a motion for summary judgment must counter the affidavits and documents submitted by the moving party in its Rule 56.1(a) statement, submitted in support of its motion for summary judgment, with materials of "evidentiary quality" (*e.g.*, depositions or affidavits) that create a genuine factual issue. *Adler v. Glickman*, 87 F.3d 956, 959 (7th Cir. 1996). While the evidence offered need not be in a form that would be admissible at trial, *see Liu v. T&H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999), the evidence must identify a specific, genuine issue for trial. *See Shermer*, 171 F.3d at 477.

Mr. Noah has failed to submit a timely response to Mancari's motion for summary judgment.[3] Thus, Mr. Noah has failed to present evidence to raise a genuine material dispute concerning the facts asserted by Mancari in its motion. The Court deems the material facts asserted by Mancari admitted in this case, but not merely because Mr. Noah failed to respond in a timely manner. Without evidentiary support for the assertions, Mancari's statement would be a hollow document, and the Court would be remiss to find that its assertions, in conclusory form, should be admitted. But that is not the case here. After review of the materials submitted by Mancari in

---

[3]Defendant's summary judgment motion was filed on January 10, 2000. After several earlier extensions of time to respond, the Court set November 30, 2000 as a final deadline for a summary judgment response, and specifically stated that if Mr. Noah failed to file a brief by that date the Court would consider the briefing closed and would rule on the Motion (doc. #58). Mr. Noah failed to meet the deadline, and on January 2, 2001, the Court denied Mr. Noah's belated request to further extend the time to respond (doc. # 65). Thereafter, the Court struck two filings by Mr. Noah that attempted to circumvent the Court's January 2, 2001 order (doc. ## 68, 73).

support of its factual assertions, the Court finds that those assertions are supported by the evidence, and for purposes of this motion, the material facts are therefore undisputed.

## III.

### A.     Mr. Noah's Initial Employment.

Mancari is an automobile dealership, with its principal place of business in Oak Lawn, Illinois (Def.s' Facts ¶ 2). Mr. Noah began work at Mancari on or about April 15, 1993 as a journeyman mechanic working on the second shift on Mancari in-house service department (*Id.*, ¶¶ 7-8).

It did not take long for Mancari to become critical of Mr. Noah's job performance. On January 14, 1994, Mancari gave Mr. Noah a written warning for inability to perform an assigned job; that warning carried with it a suggestion for termination (Def.'s Facts ¶ 9). Within the next week, Mr. Noah received two more written warnings. On January 21, 1994, Mancari gave Mr. Noah a written warning for being late on successive days (January 18 and 19), and a written warning (with another suggestion for termination) for failing to satisfy a guarantee to book a minimum number of hours (*Id.*, ¶¶ 10-11). After a meeting with Mancari and a union representative, Mr. Noah was not terminated (*Id.*, ¶ 12). However, shortly thereafter, on January 26, 1994, Mr. Noah allegedly suffered the injury that is the genesis of this disability case (*Id.*, ¶ 13).

### B.     The Alleged Injury.

Mr. Noah claims that during his shift on January 26, 1994, he suffered an injury while pushing a van (Def.'s Facts ¶ 14). Mr. Noah did not fill out an accident report of this injury, as was required by Mancari in the event of a workplace injury (*Id.*, ¶¶ 16-17); nor did Mr. Noah tell anyone at work that evening that he had injured himself or was experiencing pain (*Id.*, ¶ 15). Moreover, Mr.

4

Noah submitted an insurance form leaving blank the space on the form asking if his injury was job-related (*Id.*, ¶ 18); when Mr. Noah's wife brought the form to Mancari, she directed that the space be completed with information stating that the injury was not job related (*Id.*, ¶ 19).

Whatever the source of the alleged injury, Mr. Noah did not return to work at Mancari after January 26, 1994 (Def.'s Facts ¶ 13). In November 1994, Dr. Hekmat-Panah, one of Mr. Noah's treating physicians, released him for return to work. Dr. Hekmat-Panah said that while it might be "possible" that Mr. Noah could not do work that required continuous heavy lifting, the doctor opined that he was fit to return to "any kind of work" (*Id.*, ¶¶ 22-23).[4] However, at that time, Mr. Noah did not inform Mancari of this release or of any desire to return to work.

## C.    The June 1995 Request to Return to Work.

In June 1995, Mr. Noah asked to return to work on Mancari's second shift (Def.'s Facts ¶ 28). By that time, Mr. Noah had been off of work for more than one year. Under Mancari's collective bargaining agreement, an employee who is off for more than one year due to sickness or disability loses seniority, and has no rights to re-employment (*Id.*, ¶¶ 36-37).

At the time of Mr. Noah's inquiry in June 1995, Mancari had closed the second shift for economic reasons and, as a result, had laid off all second shift employees (Def.'s Facts ¶¶ 29-30). Mr. Noah thus was not rehired in June 1995. Mr. Noah does not assert that this denial of employment was discriminatory.

Mr. Noah admits that when he made his request in June 1995, he did not require any accommodations in order to do the work of a journeyman mechanic (Def.'s Facts ¶¶ 46, 49-50) –

---

[4]Mr. Noah claims another physician, Dr. Sunbulli, also gave him a release, but with restrictions: no heavy lifting or pushing cars. However, this release was never given to Mancari, and has not been produced in this lawsuit (*Id.*, ¶¶ 26-27).

a job that requires heavy lifting (*Id.*, ¶ 57). Nor did Mr. Noah require an adjustment in his work schedule, or time off for medical treatment (*Id.*, ¶¶ 47-48).

**D.    The Fall 1995 Request to Work.**

In October 1995, Mancari decided to reinstate the second shift due to high volume demands and, as a result, recalled all employees who had a right to re-employment under the collective bargaining agreement (Def.'s Facts ¶¶ 31-32). Shortly before that re-opening, Mr. Noah requested employment by sending written applications by facsimile and certified mail, and by leaving at least one telephone message (*Id.*, ¶¶ 38-39). Mr. Noah did not request any accommodation (*Id.*, ¶ 110).

At that time, Jeff O'Connell was Mancari's service manager, and had full authority to hire and fire mechanics (Def.'s Facts ¶ 40). Mr. O'Connell decided to hire applicants other than Mr. Noah because of his belief that Chrysler product experience was an important requirement, and his determination that other candidates had more experience in that product line than did Mr. Noah (*Id.*, ¶¶ 44-45). Mr. Noah does not know of anyone who was told or heard that he was not rehired as a result of some disability (*Id.*, ¶ 109).

**E.    Mr. Noah's Work Experience After October 1995.**

After his unsuccessful attempts to regain employment at Mancari, in December 1995, Mr. Noah sought employment as a mechanic with numerous businesses (Def.'s Facts ¶¶ 52-96). Mr. Noah performed mechanic's work (without pay) between January 1994 and June 1996 (*Id.*, ¶ 98). Between June 1996 and February 1998, Mr. Noah worked in a variety of paying jobs as a mechanic (*Id.*, ¶¶ 99-103). In those jobs, Mr. Noah admits that he did not require assistance due to a disability, and that there was no mechanic's work he could not do as a result of any disability (*Id.*, ¶¶ 104-05).

**IV.**

Mr. Noah's complaint, alleging discrimination under the ADA, was filed on November 27, 1996. The complaint, and thus the case, is properly before this Court for *de novo* consideration of Mr. Noah's discrimination claims, because his administrative remedies with the EEOC have been exhausted. *See Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994). Mr. Noah alleged that he received a Notice of Right to Sue from the EEOC on September 5, 1996, and this complaint was timely filed thereafter. We note that a copy of the right to sue letter was not attached to the complaint, as required. However, Mancari did not make anything of this failure, and so we deem that argument, if there was one, waived. Thus, we turn to the merits.

The ADA prohibits covered employers from discriminating against qualified individuals because of their disability. *See Sieberns v. Wal-Mart Stores,* 125 F.3d 1019, 1021-22 (7th Cir. 1997). The ADA affords protection against two types of discrimination: disparate treatment of qualified, but disabled, employees; and failure to provide reasonable accommodation for qualified, but disabled, employees. *See id.* Regardless of which type of discrimination plaintiff alleges, in order to recover under the ADA, the plaintiff must have a statutory disability. Disability is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)). If the plaintiff's impairment falls under any one of these three subparts, then the plaintiff is considered disabled under the Act.

Subpart A of the definition requires, *inter alia*, that the impairment "substantially limit" a "major life activity." *See Webb v. Clyde L. Choate Mental Health and Development Center,* 230

7

F.3d 991, 997 (7th Cir. 2000). To qualify as "substantially limiting" the major life activity of working, the plaintiff's ability to perform not just his or her current job, but a class or a broad range of jobs, must be significantly reduced. *See id.* at 998 (citing *Weiler v. Household Finance Corp.*, 101 F.3d 519, 525 (7th Cir.1996)).

Mancari's evidence reveals that Mr. Noah, by his own testimony, has essentially admitted that he can not only work, but also that he has been doing the same or comparable work since the time of his re-application in June 1995. For example, Mr. Noah admitted that he was fully capable of performing the duties of an auto mechanic when he sought rehire in the fall of 1995 (Mancari's Facts ¶¶ 98-101, 103) (citing Noah Dep. 8, 17, Ex. E). Mr. Noah further testified that he was not limited in his ability to perform the physical requirements of the auto mechanic work that he performed thereafter (Mancari's Facts ¶¶ 104-105) (citing Noah Dep. 21, Ex. E). These evidentiary admissions eliminate any genuine dispute that Mr. Noah, at the time his application for re-employment was rejected, was not disabled within the meaning of the ADA.

Mancari's other evidence also supports summary judgment in its favor. One of Mr. Noah's treating physicians, Dr. Hekmat-Panah, prepared a report stating that it was *"possible"* that Mr. Noah would not be able to perform functions that require continuous heavy lifting; but, he went on to say that "there is no reason for [the plaintiff] not to return to any kind of work." (Mancari's Facts ¶¶ 22-23) (citing Noah Dep., Attachment 3, Ex. E) (emphasis added). Although Mancari acknowledges that testimony by Mr. Noah indicates that another doctor, Dr. Sunbulli, gave him a work release stating that he should not lift more than 25 pounds or push cars, there is no evidence in the record, other than Mr. Noah's testimony, supporting this assertion. Without such medical or objective evidence of a disability, Mr. Noah's claim of disability or impairment based on "lifting restrictions"

8

would be based solely on his own testimony. This testimony would be self-serving and insufficient, by itself, to form the basis for a disability claim under the Act. *See Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993) (self-serving statements without factual support in record are insufficient to create genuine issue of fact).

Moreover, even if Mr. Noah had "lifting restrictions," these limitations would not be sufficient, by themselves, to establish a disability that falls within the protection of the Act. The Seventh Circuit has indicated that lifting restrictions do not rise to the level of a "substantial limitation" as contemplated by the ADA. *See Contreras v. Suncast Corp.,* Nos. 00-1977, 00-2493, 2001 WL 8434, at *5 (7th Cir. 2001) (taking note that other Circuits have so held: *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996); *Aucutt v. Six Flags Over Mid-America*, 85 F.3d 1311, 1319 (8th Cir.1996)). *See also Matthews v. TCI of Illinois*, No. 95 C 4096, 1996 WL 332693, at *3 (N.D. Ill. 1996) ("the imposition of a lifting restriction, … is not sufficient to establish the existence of a disability").

Under subpart B, Mr. Noah could show that he was disabled by pointing to evidence that the employer, here the defendant Mancari, relied on a "record" indicating that Mr. Noah had a "substantially limiting" impairment as contemplated by the Act. *See* 42 U.S.C. §12102(2)(B). But the Court finds no evidence of any "record" indicating "substantial limitations" on his abilities either. In fact, even if the Court were to credit the letter by Dr. Hekmat-Punah as establishing a lifting restriction, this restriction is not sufficient, by itself, to establish a record of disability, and so Mr. Noah's subpart B claim of disability would fail as well for lack of evidence.

Finally, under subpart C, a plaintiff can establish a disability by proving that the defendant "regarded" the plaintiff as having an impairment that substantially limits one or more major life

activities.  *See* 42 U.S.C. §12102(2)(C).  To satisfy this definition, the defendant must have considered the plaintiff "substantially limited" in a major life activity as contemplated by the Act.  *Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 522 (1999).  Again, there is no evidence that any relevant representative of Mancari knew of Mr. Noah's alleged limitations on his ability to work.  Mr. Noah testified in his deposition that he did not inform anyone in the service department or anyone in management of his alleged limitations on lifting (Mancari's Facts ¶ 24) (citing Noah Dep. at 68, Ex. E).  And certainly, as Mr. Noah admits, he did not make a request for accommodation which might have given Mancari reason to think him "disabled."

Therefore, Mr. Noah has failed to show that he was disabled as contemplated by the ADA.  Because the ADA only affords protection to the disabled, Mr. Noah, as a matter of law, may not recover under the Act.  *See E.E.O.C. v. Sears, Roebuck & Co.,* 233 F.3d 432, 438 (7th Cir. 2000); *Amadio v. Ford Motor Co.,* No. 99 C 3728, 2001 WL 82915, at *4 (7th Cir. 2001).[5]

---

[5]Because the factual record reveals no triable issue concerning Mr. Noah's status as a disabled person under the Act, we need not address at length the other arguments raised by Mancari.  However, we do note that the summary judgment record does not reveal any evidence that Mancari's failure to rehire in the fall of 1995 was motivated by discrimination based on any alleged disability.  There is no evidence to indicate that Mr. O'Connell's stated reason for failing to rehire Mr. Noah (that he had less Chrysler product experience than did the other candidates) was pretextual.  Moreover, there is no evidence to indicate that Mr. Mancari, the owner of defendant, harbored an intent to discriminate on the basis of disability, or that any such alleged intent infected the decision of Mr. O'Connell, who made the decision not to rehire Mr. Noah.  *See, e.g., Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1400 (7th Cir. 1997) (alleged bias of a non-decision maker is generally not computed to the decision maker).

## CONCLUSION

IT IS THEREFORE ORDERED that Mancari's motion for summary judgment (doc. # 41-1) is GRANTED. This case is therefore terminated. The Clerk of the Court is to enter final judgment for Mancari and against Mr. Noah, pursuant to Fed.R.Civ.P. 58. Each party is to bear its own costs.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: February 21, 2001